UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

EH LIQUIDATING, INC.,                          Case No. 22-90006-swd
*fka* THE ENSTROM HELICOPTER            Chapter 7
CORPORATION,                                      Hon. Scott W. Dales

          Debtor.

———————————————————————/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:    HONORABLE SCOTT W. DALES
              Chief United States Bankruptcy Judge

## I.   INTRODUCTION

On February 15, 2023, Chongqing General Aviation Industry Group Co., Ltd. ("General Aviation") filed its Motion for Summary Judgment or in the Alternative to Dismiss Objection to Claim (the "Rule 56 Motion," ECF No. 252) in response to the Trustee's Objection to Claim Number 30-1 Filed by Chongqing General Aviation Industry Group Co., Ltd. (the "Claim Objection," ECF No. 224). Chapter 7 trustee, Darrell R. Dettmann ("Trustee"), timely opposed the Rule 56 Motion. For the following reasons, the court will deny the motion.

## II.  JURISDICTION

All parties have agreed, and the court concludes, that it may exercise the jurisdiction bestowed on the United States District Court under 28 U.S.C. § 1334(a) and (b) and referred to this court under 28 U.S.C. § 157(a). *See* W.D. Mich. LCivR 3.1. Indeed, this matter epitomizes a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B) because it involves the allowance or disallowance of claims, which the Supreme Court acknowledges lies at the core of a bankruptcy court's historic functions. *Stern v. Marshall*, 564 U.S. 462, 475 (2011). To remove

any doubt on this point, however, all parties formally consented to this court's entry of a final judgment at the pre-trial conference held in Grand Rapids on January 25, 2023.

The court certainly has authority to deny the Rule 56 Motion, given the nonfinal nature of such a ruling, but also the authority to enter a final order after trial if the parties do not sooner settle their dispute.

### III. BACKGROUND

EH Liquidating, Inc., formerly known as The Enstrom Helicopter Corporation ("Enstrom Helicopter" or "Debtor"), is a Delaware corporation that operated from its plant in Menominee, Michigan, since 1959. Claim Objection at ¶ 6. Before the Trustee sold substantially all of its assets early in this bankruptcy case, Enstrom Helicopter designed, engineered, and manufactured light, single-engine piston and turbine helicopters. *Id.*

In 2012, General Aviation acquired Enstrom Helicopter, purchasing 100 percent of the shares in the Debtor. *Id.* In the years that followed, General Aviation and Enstrom Helicopter participated in multiple financial transactions that generally came in three forms: (1) direct fund transfers from General Aviation; (2) deposits from General Aviation associated with supposed purchases of helicopters and parts; and (3) fund transfers originating from foreign banks, Shinhan Bank and DBS Bank, with Enstrom Helicopter (the subsidiary) acting as borrower and General Aviation (the parent) acting as guarantor, evidently supported by letters of credit. *Id.* at ¶¶ 10, 20; Rule 56 Motion at ¶ 4.

Enstrom Helicopter filed its voluntary chapter 7 bankruptcy petition on January 21, 2022 (ECF No. 1). General Aviation timely filed a proof of claim on May 12, 2022, and then amended it on December 22, 2022 (the "Claim"), evidently in response to the Trustee's Claim Objection. *See* Claims Nos. 30-1 and 30-2. By filing the Claim, General Aviation seeks to recover a putative

debt in the amount of $31,588,166.00. *Id.* The Trustee filed his Claim Objection on October 31, 2022, arguing that the amounts set forth in the Claim are not debts, but "equity contributions." Claim Objection at ¶ 27; Fed. R. Bankr. P. 3007 (objection must be in writing and filed). In the Claim Objection, the Trustee requests that the court recharacterize the transactions underlying General Aviation's supposed Claim as equity contributions (as opposed to varying types of debt) and disallow the Claim as an unsecured claim in its entirety. *Id.* at ¶ 26.

Following a January 25, 2023, status conference concerning the Claim Objection, the court entered its Pretrial Order Regarding Claim Objection (the "Pretrial Order," ECF No. 248), permitting General Aviation to file a motion "directed at securing the benefits of the presumption under Rule 3001(f), presumably in the form of immediate rejection of the Objection." Pretrial Order at p. 3. General Aviation filed its Rule 56 Motion, invoking Fed. R. Civ. P. 12(b)(6) and 56, in accordance with the Pretrial Order.[1]

## IV. ANALYSIS

1. Appropriate Standard of Review

In its Rule 56 Motion, General Aviation seeks relief under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure (applicable here through Rules 7012 and 7056), ultimately leaving the court to choose which rule to apply. Moving forward under a Rule 12(b)(6) analysis would limit the court's scope of review to the statements made in the Claim and Claim Objection, analogizing these documents to the complaint and answer in an ordinary civil action.[2] Pursuing

---

[1] The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq.* and the Federal Rules of Civil Procedure are set forth in Fed. R. Civ. P. 1 *et seq*. The court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference.

[2] A motion to dismiss under Rule 12(b)(6) seeks dismissal of a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In addition to the rule's limitations, relying on Rule 12(b)(6) is inconsistent with analogizing the Claim to a complaint, because General Aviation would be in the position of a plaintiff, thus seeking to dismiss its own pleading.

an analysis under Rule 56, in contrast, would expand the court's review to additional evidence that would be admissible at trial, including General Aviation's Response to the Claim Objection, the exhibits attached to General Aviation's Rule 56 Motion, and the Trustee's Response in Opposition to Chongqing General Aviation Industry Group Co., Ltd.'s Motion for Summary Judgment or in the Alternative to Dismiss (the "Response," ECF No. 258).[3]

In contrast to a Rule 12(b)(6) analysis, which indulges inferences in favor of the "complaint," a Rule 56 analysis requires a court to draw reasonable inferences in favor of the non-moving party, here the Trustee. The approaches are distinct, and Rule 12(d) requires the court to choose. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The court will not exclude from its consideration the additional materials upon which the parties rely and will therefore address the controversy under Rule 56. *Id.*

2. Summary Judgment Under Rule 56 and Burden of Proof

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (applicable here through Fed. R. Bankr. P. 7056); *McCafferty v. McCafferty* (*In re McCafferty*), 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As noted above, the evidence and all reasonable inferences must be construed or drawn in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986); *Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001).

---

[3] "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When confronting a properly supported motion for summary judgment, a non-moving party must establish that a fact of consequence to the litigation is "genuinely disputed" and must do so either by citing to materials in the record, showing that the materials cited in support of the motion do not meet the movant's burden, or that the movant "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Trustee, here the party opposing the Rule 56 Motion, must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) and *Matsushita Elec. Ind. Co.*, 475 U.S. at 586). As courts frequently observe, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so on-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Notably, and unique to claims litigation in bankruptcy, a party challenging a proof of claim has an additional hurdle to jump, because Rule 3001(f) erects an evidentiary presumption in favor of the entity asserting a claim. More specifically, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also* 11 U.S.C. § 502(a).[4]

The presumption that Rule 3001(f) raises has at least two jobs, serving evidentiary and efficiency goals. First, it streamlines the claims distribution process by giving trustees evidentiary support for paying creditors based on properly filed proofs of claim without insisting on additional

---

[4] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq.* Specific sections of the Bankruptcy Code are identified herein as "§ ___."

documentation or testimony.  This reduces delay and expense, consistent with the trustees' duty under § 704(a)(1), and the aim of procedural rules generally.  *See, e.g.*, Fed. R. Bankr. P. 1001. Second, the presumption protects creditors who play by the rules from meritless challenges and harassment -- a party in interest who takes aim at a creditor with a properly filed proof of claim must think twice before mounting the challenge.  This also reduces needless expense and delay. In the main, the presumption serves the welcome role of reducing the transaction costs of bankruptcy.

The presumption, however, is just that -- a presumption.  It is merely evidentiary, not conclusive, and like most presumptions, is subject to rebuttal.  One way of understanding Rule 3001(f)'s presumption, at least in the context of a claim contest, is that during trial the presumption will insulate a creditor with a duly filed proof of claim from an adverse decision on a Rule 50 or Rule 52(c) motion regarding the validity and amount of the claim.[5]  Nothing in Rule 3001(f), however, ever removes from a creditor the ultimate burden of proof -- it simply helps a creditor meet that burden -- and nothing in the rule changes the summary judgment analysis under Rule 56. Here, because the Claim is "deemed allowed" in the parlance of § 502(a), General Aviation has a strong tailwind and will land in the money if the Trustee fails to produce evidence to rebut Rule 3001(f)'s evidentiary presumption.

Judge Shefferly from the Eastern District of Michigan helpfully explained the procedural posture:

> When an objection to claim is made, the party objecting to the claim bears the
> initial burden of producing sufficient evidence to rebut the prima facie effect of
> the proof of claim. *In re Hughes*, 313 B.R. 205, 208 (Bankr. E.D.Mich. 2004)

---

[5] In a bench trial, Rule 52(c) provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Rule 50 is to similar effect in the context of a jury trial.

(citations omitted). Once the objecting party produces facts sufficient to demonstrate that an actual dispute exists regarding the validity or amount of the claim, the burden of going forward shifts to the claimant to submit evidence to sustain the claim. *Id.* (citations omitted). Although the burden of going forward shifts during the claims objection process, *the ultimate burden of persuasion is always on the claimant to establish entitlement to the claim. See* Fed. R. Bankr. P. 3001(f).

*In re Plastech Engineered Prod., Inc.*, 399 B.R. 1, 10 (Bankr. E.D.Mich. 2008) (emphasis added); *see also Bavelis v. Doukas (In re Bavelis)*, 773 F.3d 148, 154 (6th Cir. 2014) (after creditor files proof of claim, the burden shifts to objecting party to refute creditor's allegations).

Therefore, the question for the court at this stage in the proceedings is whether there is sufficient evidence in the record that, if admitted and credited, could rebut General Aviation's evidentiary presumption. Fed. R. Civ. P. 56(c)(1). If, or to the extent the Trustee meets his burden of production, the matter will head to trial; if not, the presumption will carry the day and the court must overrule the Claim Objection.

3. Trustee's Theory Under *Autostyle Plastics*

The Trustee's challenge rests on the theory that General Aviation's Claim represents its equity contributions, rather than *bona fide* loans or advances to Enstrom Helicopter, presenting the question of whether the court should recharacterize the putative claim as, instead, equity contributions. Because a corporation cannot provide a return on equity before satisfying its debts, the Trustee seeks to disallow the Claim. *Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 749 (6th Cir. 2001) (contrasting equitable subordination and recharacterization as remedies).

The question of whether advances to a corporation constitute capital contributions or loans is a question of fact. *Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 629 (6th Cir. 1986) (tax case cited approvingly in *Autostyle Plastics*). Factual disputes, if genuine and material, do not lend themselves to resolution under Rule 56.

The Sixth Circuit recognizes a bankruptcy court's authority to recharacterize a putative claim as an equity contribution, prescribing a series of "factors" for the court to consider when confronting such a request:

> The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayment.

*Autostyle Plastics, Inc.*, 269 F.3d at 749-50 (citing *Roth*, 800 F.2d at 629).  None of these factors, alone, is dispositive, and the court must consider them on a case-by-case basis.  *Id*.  The guiding principle is this: "[t]he more [a transaction] appears to reflect the characteristics of … an arm's length negotiation, the more likely such a transaction is to be treated as debt."  *Id*. (citation omitted).

In support of the Rule 56 Motion, General Aviation argued that the allegations set forth in the Claim Objection were unsupported by any factual allegations and is premised on "illogical conjecture."  Rule 56 Motion at ¶ 14.  Taking aim at the Declaration of Matthew Francour dated Oct. 27, 2022 ("Francour Declaration," included in ECF No. 224) and the Board Directors Particular Meeting Minutes (the "2016 Meeting Minutes"), General Aviation asserts that neither supports the Trustee's position that the financial transactions between General Aviation and Debtor were equity contributions.  General Aviation states that the Trustee "grossly mischaracterize[ed]" the statements made in the Francour Declaration, and that the declaration actually supports General Aviation's position that there is no dispute surrounding the details and present characterizations of the transactions.  The court is not persuaded.

In opposition to General Aviation's Rule 56 Motion, the Trustee produced the Francour Declaration and the 2016 Meeting Minutes, additional meeting minutes, and multiple email communications between General Aviation and the Debtor, in addition to the statements made in the Claim Objection and Response.   According to the Trustee, the combination of these communications and declaration corroborated the assertions set forth in the Claim Objection, namely that Debtor was undercapitalized, that General Aviation had to characterize some transactions as dummy purchases in order to get around Chinese law, and that General Aviation never intended to be paid back for any amount contributed to the Debtor during its time in operation.

Most generally, and drawing inferences in favor of the non-moving party, the tenor of the relationship between the parent corporation and its subsidiary, according to the Debtor's former president and chief executive officer's testimony, hardly suggests arms-length dealings.  *See, e.g.*, Francour Declaration at ¶¶ 9, 11, 13-15, 20-23.   The testimonial evidence included within the Francour Declaration, if credited, tends to rebut General Aviation's characterization of the underlying transactions as debt.

Certainly, the Trustee has not, at this stage, nailed down every factor -- indeed he concedes, for example, that "the names given [to] the transaction documents. . . suggest something other [than] equity contributions."[6]  He also concedes, as the various emails overwhelmingly suggest, that the parent funded the subsidiary's day-to-day operations (payroll and vendors, for example) rather than capital improvements, a factor that points to the loan, rather than equity, side of the spectrum.  *Roth*, 800 F.2d at 625 ("Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness.").  Yet,

---

[6] *See* Trustee Response at p. 5.

as the Sixth Circuit teaches, the proponent of recharacterization need not offer evidence on every *Autostyle* factor, and certainly not at this stage of the proceedings, because no single factor is "controlling or decisive." *Autostyle Plastics*, 269 F.3d at 750.

The Trustee has pointed to ample evidence addressing other *Autostyle* factors, making a strong case for the Debtor's inadequacy of capitalization,[7] absence of a sinking fund or other repayment sources (except from successful operations),[8] and inability to obtain outside funding.[9] It seems more than plausible that General Aviation's "only hope for repayment would be after obligations to [the Debtor's] other creditors were satisfied," suggesting a *de facto* subordination indicating that the parent's advances "were capital contributions and not loans." *Roth*, 800 F.2d at 631-32.

The evidence strongly suggests that General Aviation did not require collateral to secure advances, also suggesting equity contributions, according to our Circuit. *Autostyle Plastics*, 269 F.3d at 752 (citing *Roth*, 800 F.2d at 632).

With respect to the maturity and interest rates, the evidence so far is more equivocal. Some of the email traffic refers to interest rates, and the several putative notes refer to a "one year" maturity, yet it appears that, in practice, the parent's expectation of repayment was utterly tentative, as the repeated renewals or extensions suggest.

---

[7] Francour Declaration at ¶¶ 4, 6; Response at Exh. A, April 2016 Email Chain ("If there are no other options available for funding . . . EHC will be in a position where we may need to shut down operations in a few weeks."); Response at Exh. G, May 2018 Email Chain ("Enstrom will not have enough [money] after [June 1st] to pay our employees (Payroll) as well as other necessary payments . . . ."); Response at Exh. I, January 2015 Email Chain ("Enstrom is currently borrowed at its maximum."); *id.* ("Cash flow issues have been discussed continually since the change in ownership.").

[8] Francour Declaration at ¶ 10; Response at Exh. B, 2017 Board Meeting Minutes ("[T]he only way to solve cash flow problem is to sell more inventory products and get money back."); Response at Exh. I, January 2015 Email Chain ("Enstrom does not have another source of revenue besides aircraft sales."); *id.* ("[T]here are no cash reserves available.").

[9] Francour Declaration at ¶¶ 6, 26; Response at Exh. A, April 2016 Email Chain ("[Wells Fargo] does not believe that Enstrom is strong enough financially to qualify for the loan on a standalone basis."); *id.* ("BOC in the US will not process the loan . . . .").

Nor, at this stage of the proceedings, is the court especially impressed with General Aviation's counterarguments regarding the effect of Chinese law on foreign investment.  The court may well conclude that Chinese law was not as hostile to capitalizing foreign subsidiaries as the Trustee suggests in his Objection, but the record certainly includes statements from General Aviation's officials supporting the Trustee's theory.  It is, of course, conceivable that Chinese export law would have allowed capital infusions and that the advances, deposits, and guarantees were not, as a matter of law, necessary.  It may also be the case that General Aviation's officials did not share its current counsel's view of the regulatory environment.  In other words, given the statements throughout much of the email traffic, and in the Francour Declaration, General Aviation's officials may have believed, perhaps mistakenly, that they needed to cloak their capital contributions in the clothing of debt.  But if so, this has a bearing on their intent regarding whether the infusions were equity or debt -- the central question in this contested matter.  It may not be the first time that corporate actors were confused about their country's regulatory requirements, and it certainly won't be the last.

It is true that evidence in the record occasionally suggests General Aviation's hope for repayment, but usually in precatory, rather than mandatory, language, and not nearly as forcefully as one would expect, given the positional power that the parent enjoyed as 100% shareholder. Drawing inferences in the Trustee's favor, a factfinder might disregard the episodic and tepidly expressed aspirations of repayment, and treat the infusions as capital contributions, especially if (as the Trustee implies), General Aviation had regulatory concerns, well-founded or not, about its government's treatment of foreign investment and capital flowing outside the country.

Based on a straightforward evaluation of the usual summary judgment burdens under Rule 56, and a careful review of the additional evidence produced in connection with the Claim

Objection, the Rule 56 Motion, and the Response, the court finds that there is a genuine dispute concerning the existence of General Aviation's claim. *Autostyle Plastics*, 269 F.3d at 748 (recharacterization asks whether a debt actually exists). While the court acknowledges, and agrees, that Rule 3001(f) raises an evidentiary presumption in favor of General Aviation as the holder of a duly-filed proof of claim, the court also finds that, in a light most favorable to the Trustee, the Trustee has pointed to evidence to rebut the evidentiary presumption, at this stage in the proceedings. The Trustee's Claim Objection, Response, and additional exhibits (i.e., their interpretation of the monetary transactions between Debtor and General Aviation) completely contradicts that of General Aviation's. There is absolutely no dispute that multiple monetary transactions occurred between the Debtor and General Aviation, but the evidence currently produced does provide for differing interpretations of the same. Therefore, because there is a genuine dispute as to whether the transactions at issue were equity contributions, or loans meant to be repaid, the court must deny the Rule 56 Motion.

### V. <u>CONCLUSION AND ORDER</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Here, each party has presented sufficient arguments and evidence, at this stage, to raise a genuine factual dispute regarding the nature of General Aviation's payments to the Debtor as reflected in the Claim. Accordingly, the court will deny the Rule 56 Motion.

Discovery in this contested matter will undoubtedly shed light on the nature of the relationship between the Debtor and its parent, and flesh-out more fully the *Autostyle Plastics* factors as they apply to the three categories of transactions the parties have identified. Although much of the record evidence so far relates to the deposits from General Aviation associated with

supposed helicopter and parts production, rather than the proffered loans and guaranty-related debts, it is conceivable that after trial the court may put some of the transactions on one side of the spectrum, and some on the other.  For now, the current summary judgment record permits, but does not compel, the court to find that the relationship between parent and subsidiary fell short of the arms-length dealing typically indicating debt, and that is enough to allow the contested matter to proceed.

As set forth in the Pretrial Order, the parties must now turn their attention to alternative dispute resolution ("ADR"), which they agreed would take place quickly: "[t]he ADR shall be completed within 35 days after entry of the court's order regarding the Rule 3001(f) motion (if the court permits the contested matter to continue), and the Neutral shall file a report of the outcome of the ADR within that time."  (Pretrial Order at p.3, ECF No. 248).  Notwithstanding this short time-frame, the court will be receptive to allowing any mutual agreed extension, especially given vacation schedules and the international aspects of this dispute.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Rule 56 Motion is DENIED as provided herein; and

2.      The parties shall proceed apace with the ADR phase of this contested matter.

IT IS FURTHER ORDERED that the Clerk shall serve this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon EH Liquidating, Inc., Brendan G. Best, Esq., Thomas B. Radom, Esq., Elisabeth M. Von Eitzen, Esq., Charles R. Quigg, Esq., Darrell R. Dettmann, Esq., and the United States Trustee.

**IT IS SO ORDERED.**

**Dated March 24, 2023**



Scott W. Dales
United States Bankruptcy Judge